Argued July 22, reversed and remanded August 26, 1971

## STATE OF OREGON, *Respondent, v.* RICHARD METLER, *Appellant.*

487 P2d 1377

Robert J. McCrea, Eugene, argued the cause for appellant. With him on the brief were Mulder, Morrow & McCrea, Eugene.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

Defendant appeals from a conviction of illegal possession of narcotics in violation of ORS 474.020. He seeks reversal for the failure of the trial court to suppress material evidence, narcotics, which was seized pursuant to a search warrant. The issue is the sufficiency of the affidavits in support of the warrant.

On July 8, 1970, a Corvallis police officer sought and obtained a search warrant for a residence located on 17th Street in Corvallis, and later that day for a residence located on 49th Street in Corvallis. Both warrants were issued, and both searches were made on the same day. We are here concerned only with the

two "baggies" of marihuana seized in the search of the 49th Street residence. The chronology of events was:

On July 8, Officer Miller of the Corvallis police executed an affidavit for a warrant to search the 17th Street premises. The affidavit contained the following pertinent allegations:

(1) A reliable informant had advised Miller that three people, Kevin, Kim and Harvey, were living in and dealing in drugs at a residence on 17th Street in Corvallis;

(2) Miller had checked with the city water department and found that the 17th Street residence was "listed to" one Chris Wood;

(3) Miller had seen a Ford automobile outside the 17th Street premises, checked with the Motor Vehicle Department and found the vehicle to be registered to Chris Wood. Miller had been advised by his informant that this automobile was used by Kevin, Kim and Harvey in their drug dealings.

There followed a prayer for a search warrant authorizing a search of the 17th Street premises and of any persons found there for narcotics.

On the same day Officer Miller executed another affidavit for the issuance of a search warrant in which he incorporated by reference the affidavit for the warrant to search the 17th Street premises and, in addition, stated the following:

(1) That an informant had told Miller that Kevin, Kim and Harvey, who were living and dealing in narcotics at the 17th Street premises, had been obtaining their narcotics from a larger supplier;

(2) A Benton County deputy sheriff had advised

Miller that he had maintained surveillance of a residence on 49th Street in Corvallis for several hours on July 8;

(3) That during his surveillance of the 49th Street residence the deputy had noticed "several persons [unidentified] going to the residence * * * stay a few minutes, leave and place a package [undescribed] in the trunk of the vehicle [undescribed] and drive off." The deputy further informed Miller that at 4:11 p.m. on July 8, he saw a 1965 Ford (Chris Wood's vehicle) arrive at the premises. The driver (subsequently identified as Chris Wood) was wearing levis, no shirt and was darkly tanned. A passenger remained in the vehicle. The driver entered the residence and left at 4:18 p.m., driving off in the Ford.

Officer Miller then goes on to state that at 4:30 p.m., while watching the 17th Street residence, Chris Wood and a passenger later identified as Pete Drown, drove up in Wood's Ford and parked. They took something (undescribed) from the car into the residence. Shortly thereafter Miller states that he served the search warrant at the 17th Street residence and found in the hands of Chris Wood a plastic bag containing approximately a pound of marihuana. Miller's affidavit then prays for a warrant to search the 49th Street residence for drugs.

The question is whether or not these two affidavits taken together constitute probable cause to believe that there were narcotics at the 49th Street residence. We hold that they do not. The affidavits do not tell us who lived at the 49th Street residence or what activities occurred on the premises except that several people came, stayed a few minutes, and some left with undescribed packages. None of those people

are identified with the 17th Street residence drug dealers, nor is there any statement in the affidavits that the vehicle used on any of the occasions when packages were taken out was the Ford which the 17th Street residents used in their drug dealings. The only connection between the illegal activities at the 17th Street and the 49th Street premises is that Chris Wood entered and left the 49th Street premises shortly before he was arrested at the 17th Street residence with marihuana in his possession.

The affidavit is silent as to whether or not Chris Wood carried anything that resembled a pound of marihuana out of the 49th Street premises. If it is susceptible of any inference in this regard, it negates Wood's so doing because it specifically describes Wood as so scantily clothed as to be unable to conceal on his person anything like a plastic bag containing a pound of marihuana. Unless we are prepared to say that because Chris Wood's car was being used in drug traffic there existed probable cause to search every place Chris Wood entered, the affidavits do not disclose probable cause to search the 49th Street residence.

■ The basic principles of law are axiomatic. A search warrant cannot issue except upon probable cause. *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969); *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964); *State v. Leo,* 4 Or App 543, 480 P2d 456 (1971); *Wright v. Cupp,* 3 Or App 586, 475 P2d 979 (1970); ORS 141.030.① Probable cause must be shown from the facts or "four

---

① ORS 141.030 provides:

"A search warrant cannot be issued but upon probable cause, shown by affidavit, naming or describing the person, and describing the property and the place to be searched."

corners" of the affidavits. *Aguilar v. Texas,* supra. The hindsight of success cannot assist the state. *Aguilar v. Texas,* supra; *State v. Leo,* supra.

■ "Probable cause" is substantially less than "proof beyond a reasonable doubt." However, probable cause is something more than a mere possibility. The state, citing *United States v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965), argues that affidavits for search warrants, being normally drafted by non-lawyers in the midst and haste of criminal investigation, should not be hypertechnically construed. With this we agree. However, if affidavits are to have any relevance this doctrine cannot be stretched to the point where we will infer the existence of facts not even alluded to in the affidavit. It would be sheer speculation to infer from the affidavits in this case that Wood was the larger supplier of narcotics about whom the informants had told Officer Miller; or that the undescribed packages the unknown individuals had placed in the undescribed automobiles bore the appearance of packages of narcotics; or that Wood carried a pound of marihuana with him when he left the 49th Street premises on July 8.

*Ventresca,* in addition to telling us that doubtful or marginal cases should be largely determined by the preference to be accorded to search warrants, tells us:

> "This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. * * * Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function

and not serve merely as a rubber stamp for the police * * *." 380 US at 108-09.

Reversed and remanded.