Argued January 16, affirmed March 10, 1975

STATE OF OREGON, *Appellant, v.* GREGORY
SCOTT HUGHES (No. 74-1610), *Respondent.*

532 P2d 818

494

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before SCHWAB, Chief Judge, and FOLEY and LEE, Judges.

SCHWAB, C. J.

After being indicted for criminal activity in drugs, ORS 167.207, defendant moved to suppress evidence seized in his home during a search pursuant to a search warrant. The trial court granted the motion to suppress. The state appeals pursuant to ORS 138.060(3). We affirm.

The affidavit in application for the search warrant was executed by Officer Hostick. It purported to recite reports made to him by two citizen informants about suspicious items they had observed in defendant's house. The motion to suppress contended: (1) the affidavit contained inaccurate statements about what the informants had told Officer Hostick; and (2) the affidavit failed to establish probable cause to search. An evidentiary hearing was held on the motion to suppress. Officer Hostick and the two citizen informants testified. The state conceded that one statement of fact in the affidavit was inaccurate, and the uncontradicted testimony of the citizen informants indicated that there were other inaccuracies. After the hearing the trial court entered an order that simply

stated the motion to suppress was "granted." There were no findings.

# I

■ The absence of findings presents a threshold question, obliquely raised by the state. Defendant's motion to suppress contended the affidavit was inaccurate (a factual question) and insufficient to establish probable cause (a legal question). Ordinarily in such a situation it is incumbent upon trial courts to make findings:

> "* * * [I]n a case where a motion to suppress raises more than one contention—for example, alternative factual contentions, or alternative legal contentions, or alternative factual and legal contentions—and the trial court is persuaded to grant the motion on one or more of the grounds raised, then the trial court must state the basis of its decision." *State v. Johnson/Imel,* 16 Or App 560, 571, 519 P2d 1053, Sup Ct *review denied* (1974).

■ In this case, however, we have determined it is not necessary to remand for *Johnson/Imel* findings. After the suppression hearing, counsel filed supplemental briefs in the trial court. Defendant's brief argued the uncontradicted evidence established his claims of inaccuracies in the affidavit. The state's responsive brief did not argue the contrary, but merely stated:

> "It is submitted to the court that when the affidavit is read as whole the *inaccuracies shown* have no effect on the probable cause set forth in the established affidavit * * *." (Emphasis supplied.)

We interpret this to mean that the state was conceding the factual claims regarding inaccuracies, and instead only standing on the legal question of probable cause. Under these circumstances there is only one issue pre-

sented, and while findings are desirable, they are not essential. *Johnson/Imel,* 16 Or App at 572.

## II

Another preliminary question is: what facts can be considered in passing on the probable-cause question? We have the contents of the affidavit. There is also the transcript of the testimony taken at the suppression hearing. The state's brief relies heavily on the suppression-hearing testimony, summarizing it in four pages of its brief under the heading, "Statement of Facts." Defendant's brief states that he "accepts Appellant's [the state's] statement of facts."

Counsel in the trial court took a different tack. At the conclusion of the testimony during the suppression hearing, the court asked whether counsel agreed that the testimony which "enlarged upon the information in the affidavit" could not be considered in determining whether there was probable cause to search. Defense counsel responded: "Yes, just the four corners of the affidavit." The prosecutor also agreed the evidence could not be considered "other than as to show that some of the statements may not have been entirely accurate in the affidavit."

■ ■ We agree with the approach of the trial court and trial counsel, and disagree with the approach of the parties on appeal. The question here is whether probable cause was established before the magistrate who issued the search warrant. To decide this question we must necessarily limit the inquiry to the information that was before the magistrate, that is, the contents of the affidavit. The testimony at the suppression hearing can detract from the affidavit to the extent that it proves inaccuracies; but the testimony cannot add to the affidavit because information known

to an affiant but not communicated to the issuing magistrate cannot be the basis of a probable-cause determination. *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964); *State v. Dunavant,* 250 Or 570, 444 P2d 1 (1968); *State v. Sagner,* 12 Or App 459, 506 P2d 510, Sup Ct *review denied* (1973); *State v. Metler,* 6 Or App 356, 487 P2d 1377 (1971); *see also,* ORS 133.545(3).

## III

We thus turn to the contents of the affidavit in this case and the evidence of its inaccuracies.

The first three paragraphs of the affidavit recite Officer Hostick's 21 years of experience with the Oregon State Police. Most of this information does not even remotely tend to establish probable cause to believe that a crime is being committed at defendant's residence. The only possibly material part states:

"* * * I am also aware from my training and experience that a very common dosage unit form of dangerous drugs is in pills and tablet form and to manufacture such dosage unit a press is necessary as well as necessary ingredients (both the drugs as well as cutting agents) and glassware to mix, store and aid in the production is also necessary. I am also aware producing illegal drugs is most commonly accomplished when persons working at it are protected by gloves * * *."

The affidavit continues:

"4. That on this date I was informed by Richard Lee Krotzer, South Myrtle Route, Box 275, Myrtle Creek, Oregon, that he was personally present in the residence located at Rt. 1, Box 3927 A, Florence, Lane County, Oregon * * *. Mr. Krotzer further informed me that while he was in that residence on March 7, 1974, he observed a large metal press approximately 6' feet high with press plates 2½' in diameter in the garage partly covered

with a tarp. While in the garage Mr. Krotzer further observed a male subject who appeared very surprised to see Mr. Krotzer and who was also eager to remove Mr. Krotzer from the area of the press as soon as possible."

At the beginning of the suppression hearing the state conceded that the last sentence of paragraph 4 of the affidavit was false. Moreover, any inference of wrongdoing that might be drawn from the reference to the machine in defendant's garage being "covered with a tarp" was negated by testimony that the tarp was clear plastic.

The affidavit continues:

"5. That on this date I was informed by Jerrine Carolee Dietz of 43 Oak Street, Florence, Lane County, Oregon, that she was also personally present in the above described residence on this date and that while in that residence she observed in the garage of the residence a press which she has described as the same as Mr. Krotzer of above. She also informed me that at this same time she entered the residence and observed in the kitchen on the cabinet by a pantry door a pair of rubber gloves, and in the pantry she observed numerous glass equipment which she described as beekers [sic], jars and other glassware which in my experience and training describes glassware which is most commonly used in the storage and manufacture and mixing of illegal dangerous drugs. She further informed me that she observed containers of powdered materials which from her description are consistant [sic] with proved forms of material which would be used for manufacturing, cutting and mixing dangerous drugs in preperation [sic] for their product as dosage units. She further informed me that the house itself had an overpowering peculiar odor which as a lay person she was unable to identify as anything within here [sic] exper-

ience. She also observed in the residence a set of balance scales."

At the hearing Officer Hostick testified that the kind of glassware Mrs. Dietz had described to him was not "most commonly used" in the manufacture of illegal drugs, contrary to his statement in the affidavit.

The affidavit continues:

"6. That I am further informed by both of the above mentioned people that they lease that residence to the individual Mr. Krotzer saw in the garage and that they have been informed by the individual renting the premises that he is planning to move out in a very short period of time."

At the hearing Mrs. Dietz testified that defendant had not told her that he was planning to move shortly; in fact, that she had never talked to defendant in her life. Mr. Krotzer testified that he had asked defendant to vacate the premises in three days and defendant had agreed that he would. Thus, as to allegations of statements made by defendant to Mrs. Dietz, paragraph 6 of the affidavit was false, and as to allegations of statements made by defendant to Mr. Krotzer, paragraph 6 was at least misleading.

The material allegations of the affidavit conclude:

"7. These two above named individuals also informed me that blankets have been hung in the house and garage to cover the windows."

At the hearing the uncontradicted evidence was that defendant had rented the premises without drapes; that he had placed blankets on two of the many windows in the house; and that several other windows remained uncovered. Again, the affidavit is overstated to the extent of attempting to create an unwarranted implication of wrongdoing.

■ As we read *State v. McManus,* 267 Or 238, 251-52, 517 P2d 250 (1973), the test is: could the magistrate, relying only on the accurate parts of the affidavit and disregarding the inaccurate parts, have independently determined there was probable cause to search defendant's house?[①]

The accurate statements of *fact* in the affidavit here boil down to this:

(1) There is a "metal press approximately 6' high with press plates 2½' in diameter" in defendant's garage. The affidavit implies, without directly stating, that Officer Hostick believes such a machine could be used to press illegal drugs into pill form.

(2) There are beakers, "jars and other glassware" in defendant's kitchen/pantry. These items are not further described. Officer Hostick states that in his experience such glassware is most commonly used to manufacture illegal drugs, although this is conceded at the hearing to be an exaggeration.

---

[①] ORS 133.693 provides the procedures for challenging "the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented to establish probable cause for search or seizure." Subsection (5) of that statute reads:

"The court shall determine whether, under applicable law, any inaccuracy, untruthfulness or lack of good faith requires suppression."

Subsection (5) was added by amendment to the text of ORS 133.693 as proposed by the Criminal Law Revision Commission. *Minutes,* House Judiciary Committee, 4-5, May 29, 1973. The author of the amendment, Representative Hampton, explained the purpose of the amendment was

"* * * to clarify that the legal standard for suppression * * * [because of inaccuracies] was to be left to case law. It would avoid the contention that any inaccuracy would automatically invalidate the warrant." *Minutes,* supra at 5.

State v. McManus, 267 Or 238, 517 P2d 250 (1973), was decided after ORS 133.693(5) was passed, but before it went into effect. We nevertheless assume that *McManus* is part of the "case law" that the legislature contemplated would guide the application of ORS 133.693(5).

(3) There are containers "of powdered materials" in defendant's kitchen/pantry. These items are not further described. Officer Hostick states that the description of these items furnished him, but not repeated in the affidavit, leads him to believe they are "consistent" with materials used to manufacture illegal drugs.

(4) There are rubber gloves in defendant's kitchen, and odors characterized only as peculiar, and a set of balance scales in some other undisclosed location in the house.

These facts do not establish probable cause to search. All that is shown is that there is a machine in defendant's garage, and undescribed glassware, undescribed "powdered materials" and rubber gloves in defendant's kitchen/pantry. This is as consistent with lawful conduct as it is with unlawful conduct. We do not think the statements that "ingredients" and "glassware" are necessary to manufacture illegal drugs add a thing. These statements are truisms. We would be willing to take judicial notice of the fact that ingredients are necessary to manufacture drugs even if this were not stated in the affidavit.

■ The purpose of the warrant requirement is to enable a detached magistrate, rather than the police, to determine whether there is probable cause to invade the privacy of a citizen's home. *State v. Tacker*, 241 Or 597, 407 P2d 851, 10 ALR3d 355 (1965). In order for the magistrate to discharge this duty, rather than rubber-stamp a decision already made by the police, an affidavit must state facts that enable the magistrate to independently determine there is a well-warranted suspicion that evidence of crime will be found in the place sought to be searched.

■ Here Officer Hostick thought—correctly, we know from hindsight—that a machine, glassware and "powdered materials" such as had been described to him indicated a drug manufacturing operation. But the officer did not even repeat in his affidavit the descriptions he had previously received. Nor were there sufficient other facts alleged in the affidavit to permit a magistrate to independently determine that there was probable cause to search. Reduced to its simplest terms, the affidavit states that Officer Hostick believes there is probable cause to search. This is insufficient.

Affirmed.

LEE, J., dissenting.

This is a close case but I believe the majority has reached the wrong conclusion in part III of the decision.

The majority states that most of the first three paragraphs of the affidavit① do "* * * not even re-

_____

① The affidavit stated:

"1. I, Chester M. Hostick, being first duly sworn on oath depose and say that I am a trooper with the Oregon State Police and have been so employed for 21 years and as such have regularly gone to schools within the Department for training in the identification, manufacturing and distributing of illegal dangerous drugs. I have come into contact with illegal dangerous drugs on many occastions [sic]. Recently I observed an illegal drug manufacturing laboratory which had been seized by other officers on another raid and also chemicals that were seized at the same time.

"2. In my experience and training as a police officer and in my special training in identifying narcotics and dangerous drug enforcement, I am familiar with identification of illegal manufacturing and production of illegal drugs as well as the equipment necessary in such manufacturing and production.

"3. That based on that training and experience I am aware that producers of illegal drugs frequently use rented

motely tend to establish probable cause to believe that a crime is being committed * * *." In my opinion, those first three paragraphs do recite the highly pertinent factor of the officer's training and experience in the very area in question—manufacture of illegal dangerous drugs. This expertise provides a

locations and stay for short periods of time at those locations because to stay in one place for any long period of time and produce drugs at one location for any length of time greatly increases the chance of their discovery. I am also aware that dangerous drugs can and have been illegally manufactured and produced in non-laboratory settings and I am aware from previous experience and from contact with other law enforcement officers and from past proved reliable informants that illegal manufacturing and production of dangerous drugs has continued to occur in Lane County, Oregon. I am also aware from my training and experience that a very common dosage unit form of dangerous drugs is in pills and tablet form and to manufacture such dosage unit a press is necessary as well as necessary ingredients (both the drugs as well as cutting agents) and glassware to mix, store and aid in the production is also necessary. I am also aware producing illegal drugs is most commonly accomplished when persons working at it are protected by gloves, masks, and so forth, since drugs in the pure or 'dust' form which occurs during the manufacturing is easily enhaled [sic] and absorbed through the skin.

"4. That on this date I was informed by Richard Lee Krotzer, South Myrtle Route, Box 275, Myrtle Creek, Oregon, that he was personally present in the residence located at Rt. 1, Box 3927 A, Florence, Lane County, Oregon, which is located 7 miles South East of Florence, Lane County, Oregon. The house is located on the South side of Hilltop drive, ⅗ of a mile from Clear Lake Road. Said residence is further described as being brown with orange trim, it has a double garage with white doors and has a composition roof. Mr. Krotzer further informed me that while he was in that residence on March 7, 1974, he observed a large metal press approximately 6' high with press plates 2½' in diameter in the garage partly covered with a tarp. While in the garage Mr. Krotzer further observed a male subject who appeared very surprised to see Mr. Krotzer and who was also eager to remove Mr. Krotzer from the area of the press as soon as possible.

"5. That on this date I was informed by Jerrine Carolee Dietz of 43 Oak Street, Florence, Lane County, Oregon, that

highly relevant factor for evaluation of the remaining uncontroverted facts and should not be disregarded.

In item (1) of its summary of the facts concerning the "press," the majority finds that "*  *  * [t]he affidavit implies, without directly stating, that Officer Hostick believes such a machine could be used to press illegal drugs into pill form." More accurate-

---

she was also personally present in the above described residence on this date and that while in that residence she observed in the garage of the residence a press which she has described as the same as Mr. Krotzer of above. She also informed me that at this same time she entered the residence and observed in the kitchen on the cabinet by a pantry door a pair of rubber gloves, and in the pantry she observed numerous glass equipment which she described as beekers [sic], jars and other glassware which in my experience and training describes glassware which is most commonly used in the storage and manufacture and mixing of illegal dangerous drugs. She further informed me that she observed containers of powdered materials which from her description are consistant [sic] with proved forms of material which would be used for manufacturing, cutting and mixing dangerous drugs in preperation [sic] for their product as dosage units. She further informed me that the house itself had an overpowering peculiar odor which as a lay person she was unable to identify as anything within here [sic] experience. She also observed in the residence a set of balance scales.

"6. That I am further informed by both of the above mentioned people that they lease that residence to the individual Mr. Krotzer saw in the garage and that they have been informed by the individual renting the premises that he is planning to move out in a very short period of time.

"7. These two above named individuals also informed me that blankets have been hung in the house and garage to cover the windows.

"Wherefore, based upon the above described facts and my experience and training I have probable cause to believe, and do believe, that in the above described residence and garage and within the curtilage of such premises is located evidence of the crime of the illegal manufacturing and processing of dangerous drugs including, but not limited to a press, glassware and ingredients used in manufacturing dangerous drugs, as well as dangerous drugs themselves and therefore this Court is respectfully requested its warrant be issued to search the above described premises for such evidence and illegal drugs."

ly, the officer stated, in paragraph three of the affidavit, that a press was "necessary" to manufacture the drugs into pill form, and, in paragraphs four and five, that he was told by two named informants that a press was seen on the defendant's premises. Obviously, the officer could not state with certainty, under the penalties of perjury, that the "* * * machine could be used to press illegal drugs into pill form" when he had never seen it.

In item (2) of its summary of the facts, the majority mentions only that there are beakers, "jars, and other glassware" in defendant's kitchen/pantry whereas the affidavit stated that Mrs. Dietz had seen "* * * *numerous* glass equipment which she described as beekers [sic], jars and other glassware * * *." (Emphasis added.) Surely, the *quantity* of "glass equipment" coupled with the officer's training and experience increases the probability that it was being used for illegal rather than legitimate purposes.

Regarding item (3) of the majority's summary of the facts concerning "powdered materials," in my opinion it was not necessary that Officer Hostick set forth a "description" of them. It was sufficient that his training and experience led him to believe that they were "consistent" with materials used to manufacture illegal drugs.

Item (4) of the majority's summary of the facts refers to "* * * odors characterized only as peculiar * * *" that Mrs. Dietz smelled—whereas, it should be emphasized (as the majority quoted earlier from the affidavit itself) " '* * * She further informed me that the house itself had an *overpowering* peculiar odor which as a lay person she was unable to identify as anything within here [sic] experience

* * *.' " (Emphasis supplied.) It was not "odors" but an "* * * overpowering peculiar odor * * *."

The pendulum has swung too far—I believe that the majority opinion is hypercritical of the affidavit and relies on cases that are distinguishable on their facts. The majority ignores the admonition found in *United States v. Ventresca*, 380 US 102, 108, 85 S Ct 741, 13 L Ed 2d 684 (1965), when the court said:

> "* * * If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. *Technical requirements of elaborate specificity once enacted under common law pleadings have no proper place in this area. * * *"* (Emphasis supplied.)

It is vital that our system of justice be responsive to the rights of the community as well as those of the individual.

In my opinion the defendant's motion to suppress the evidence, seized pursuant to the warrant, should have been denied.

Accordingly, I respectfully dissent.