Argued September 21, affirmed November 15, reconsideration denied
December 22, 1976, petition for review denied January 25, 1977

STATE OF OREGON, *Respondent,*
*v.*
CRAIG THOMAS FEEHELY, *Appellant.*
(No. 75-4651, CA 6105)

STATE OF OREGON, *Respondent,*
*v.*
LYNN SYDNEY WALDRIP, *Appellant.*
(No. 75-4648, CA 6106)
556 P2d 142

*Robert J. McCrea,* Eugene, argued the cause for appellant. On the brief were Paul R. Frisch and Morrow & McCrea, Eugene.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

## LEE, J.

Defendants appeal their conviction of criminal activity in drugs, ORS 167.207.[1] They assign as error (1) the trial court's denial of their motions to suppress evidence of a search and seizure; (2) the admission of certain evidence; and (3) the trial court's failure to give requested instructions.

For ten days prior to September 13, 1975, police officers had been maintaining surveillance of defendant Waldrip's residence. Police Officer Guth sought a search warrant by making a recorded telephone call to a magistrate in which he supplied the following information. He was engaged in the investigation of an illegal methamphetamine manufacturing operation. He had been advised by another officer (Halford) that Halford had seen defendants with a man named Averill about 9 a.m. on September 12, 1975. Averill had been arrested before for the illegal manufacturing of dangerous drugs. Halford had observed Averill and the defendants leave Waldrip's residence by car then return to Waldrip's residence. "A short time later," Halford saw defendants in a car with someone who "appeared to be Averill" and who was dressed similarly to Averill. Guth followed the car to a residence (of Mr. and Mrs. Ziniker) on Territorial Road, where there is also a barn. When Guth was approaching the

---

[1] ORS 167.207 provides:

"(1) A person commits the offense of criminal activity in drugs if he knowingly and unlawfully manufactures, cultivates, transports, possesses, furnishes, prescribes, administers, dispenses or compounds a narcotic or dangerous drug.

"(2) Except as provided in subsections (3) and (4) of this section, criminal activity in drugs is a Class B felony, or the court may, under the criteria set forth in ORS 161.705, enter judgment for a Class A misdemeanor and impose sentence accordingly.

"(3) Notwithstanding subsection (2) of this section, if the conviction is for possession of less than one avoirdupois ounce of marijuana it is a violation punishable by a fine of not more than $100.

"(4) Notwithstanding subsection (2) of this section, if the defendant is 18 years of age or over and the conviction is for furnishing a narcotic or dangerous drug to a person under 18 years of age and who is at least three years younger than the defendant, criminal activity in drugs in [sic] a Class A felony."

barn area, he "smelled the distinctive odor of P-2-P, phenol-2-propenon," and from his experience he could recognize the smell and he knew that it was "a necessary ingredient for the process of manufacturing methamphetamine." Guth saw three men leave the residence and enter the barn after which he heard "the tinkle of glass." "A short time later" two men left the barn and drove a car in front of the barn where they opened the hood of the car and "began looking for a vacuum source." Guth heard "a hissing noise, and at that point the car engine began to run roughly" after which he heard one of the men say, " '[T]hat's a good one, that will dehydrate all we can use' * * *." Guth knew from his prior experience as a police officer that "a vacuum is important in the manufacture of methamphetamine as it is required during several steps of the manufacturing process as is the dehydration."

Guth's call to the magistrate was made approximately six hours after having made the observations. At the hearing on the motions to suppress, it was established that when the men moved from the residence to the barn, 171 feet away, they carried nothing with them. After receiving the search warrant, the police, at 6:30 a.m., on September 13, 1975, entered the barn, made seizures, and arrested defendant Waldrip. At 7:15 a.m. the police entered the residence, made seizures, and arrested defendant Feehely and Mr. and Mrs. Ziniker.

Defendants moved to suppress all evidence seized as a result of the execution of a search warrant at the premises located 1.4 miles south of Mile Post 22 on Territorial Road, on or about the 13th day of September, 1975. The trial court denied the motion with respect to the search and seizure in the barn but allowed the motion "* * * in respect to the search and seizure of property in the residence including the search of the persons in the residence for the reason that the affidavit for the search warrant does not set forth probable cause."

Defendants' first assignment of error is that the trial court erred in denying their motions to suppress as to the search and seizure in the barn. In support of this assignment defendants advance five arguments.

■■ (1) Defendants maintain that the affidavit fails to state probable cause and is thus insufficient on its face to support the issuance of a search warrant. No search warrant may issue unless it is supported by an oath or affirmation stating probable cause. U.S. Const, Amend IV; Or Const, Art I, § 9; *State v. Quartier,* 114 Or 657, 664, 236 P 746 (1925). We have stated that probable cause is substantially less than proof beyond a reasonable doubt but something more than a mere possibility. *State v. Metler,* 6 Or App 356, 361, 487 P2d 1377 (1971). Applying this standard, we believe the affidavit[2] articulated sufficient facts for a reasonably prudent person to conclude that the defendants were engaged in criminal activity.

■ (2) Defendants contend that the observations constituting the affidavit were done in violation of defendants' rights of reasonable privacy. In *State v. Brown,* 1 Or App 322, 461 P2d 836 (1969), Sup Ct *review denied* (1970), we upheld a seizure of evidence resulting from observation made in an open field by officers trespassing on the defendant's *own* property. The question, in every case, is the reasonable expectation of privacy. We perceive no violation of defendants' rights to reasonable privacy where the officers made their observations with their unaided senses from another person's land.

■ (3) Defendants argue that the affidavit contained

[2] ORS 133.545(4) provides:

"Instead of the written affidavit described in subsection (3) of this section, the judge may take an oral statement under oath when circumstances exist making it impracticable for a district attorney or police officer to obtain a warrant in person. The oral statement shall be recorded and transcribed. The transcribed statement shall be considered to be an affidavit for the purposes of this section. In such cases, the recording of the sworn oral statement and the transcribed statement shall be certified by the judge receiving it and shall be retained as a part of the record of proceedings for the issuance of the warrant."

certain inaccuracies, overstatements, and exaggerations without which the affidavit would fail to state probable cause. The affiant told the magistrate that a vacuum "is required during several steps of the manufacturing process" whereas an expert witness for the defense testified that it was possible to make the drug without a vacuum; he also testified, however, that use of a vacuum would improve the quality of the drug.[3] While the affiant's statement may not have been technically accurate, Guth's statement that a vacuum is "important" was sufficient to support a finding of probable cause. The test, as we noted in *State v. Hughes,* 20 Or App 493, 501, 532 P2d 818 (1975), is

> "* * * could the magistrate, relying only on the accurate parts of the affidavit and disregarding the inaccurate parts, have independently determined there was probable cause to search * * *?"

■ (4) Defendants insist that the scope of the search warrant was excessive. However, defendants do not mention anything seized outside the lawful scope of the search which was used against them at trial.

■ (5) Defendants argue that the transcription of the affiant's statement does not show that it was made under oath, as required by ORS 133.545(4).[4] While the transcription of Guth's call does not affirmatively show that the affidavit was taken under oath, the issuing magistrate did testify at the suppression hearing that the affiant's statement was made under oath. Under the facts of this case we find that was sufficient.

■ Defendants' second assignment of error is that the trial court erred in receiving (1) evidence that Feehely was arrested in the residence of the Zinikers and (2) testimony from Mr. and Mrs. Ziniker, who testified for the state. Defendants contend that since the search of

---

[3] An expert witness for the state testified that a vacuum is "used" in two different steps of the manufacture of methamphetamine but did not address herself directly to the necessity of a vacuum.

[4] *See* note 2.

the residence was illegal, as reflected by the trial court's ruling on the suppression order, the arrests of Feehely and the Zinikers were illegal. However, their arrests were not derived from the search of the residence; rather, they were based on probable cause and thus independently sustainable. *State v. Elk,* 249 Or 614, 619-20, 439 P2d 1011 (1968), and ORS 133.310(1)(a).[5]

■ Defendants' third assignment of error is that the trial court erred in failing to give certain requested instructions on possession. The gist of these instructions was that possession is not merely temporary custody but, rather, control with the right to dispose of the object controlled. However, defendants concede that the instruction given was legally correct. We find no error.

Affirmed.

---

[5] ORS 133.310(1)(a) provides:

"(1) A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed:

"(a) A felony, a Class A misdemeanor, an unclassified offense for which the maximum penalty allowed by law is equal to or greater than the maximum penalty allowed for a Class A misdemeanor, or a major traffic offense as defined in subsection (5) of ORS 484.010. * * *"