Argued May 16, reversed and remanded August 8, 1978

STATE OF OREGON, *Respondent,*
*v.*
STEVIE BRADFORD HOGGANS, *Appellant.*
(No. 17-424, CA 8678)
582 P2d 466

David E. Groom, Certified Law Student, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant was convicted for the burglary of a retail clothing store known as the "Cricket Cage," which is located in Washington County. The sole issue on appeal is whether defendant's motion to suppress his confessions and evidence seized should have been allowed.

On September 23, 1976, the "Cricket Cage" was burglarized and a large quantity of clothing was taken. On September 30, 1976, a Multnomah County Sheriff's Deputy was parked in a marked patrol car observing a residence located in Portland, Oregon. He testified he had this residence under surveillance because it had been the scene of many heroin sales in the past. His purpose in being there was to observe any individuals who came out of the house. At that time he was not aware that the "Cricket Cage" had been burglarized.

While observing the house he saw defendant place a portable television in the trunk of a car parked on the street in front of the house. While the trunk was open the officer saw a bag of clothing in the trunk. The defendant took one of the items of clothing and gave it to a female companion. As she walked past the deputy's vehicle he observed a tag hanging from the garment. He could not see what was on the tag, but stated it was similar to a price tag attached to clothing in retail stores.

When the defendant drove away in the automobile the officer followed. A short distance from the residence the defendant approached an intersection where the traffic light was red. He stopped part way into the intersection and then made a right turn. The officer activated his overhead lights on the patrol vehicle and stopped defendant's automobile.

Defendant immediately got out of his car and approached the officer, who asked him for his driver's license. Defendant stated he did not have his license

with him and gave the officer a false name. The officer ran a "radio check" on that name, which came back "clear." He than asked the defendant if he could search the trunk. The defendant said no, but that he would not stop the officer from searching. The officer retrieved the keys from the ignition and opened the trunk. He found the clothing in the trunk contained price tags from the "Cricket Cage."

He asked the defendant about the television and the clothing. Defendant replied he knew the clothing was stolen and the television set belonged to a friend. The officer took these items, gave defendant a receipt and released him. The record does not indicate there was any conversation regarding a traffic violation and defendant was not issued a traffic citation. The officer testified the main reason for stopping the defendant was disobedience of the traffic signal, but he testified he would have stopped defendant anyway because he suspected the television and the clothing were stolen. This suspicion was based, the officer stated, on the fact defendant's car was parked in front of a residence known as a location of illegal narcotics activity, that in his experience narcotics users often trade stolen property for narcotics, on the fact the defendant had a television set and a large quantity of clothing in his car and that he saw a tag on the item of clothing taken from the trunk.

The Multnomah County Sheriff's office subsequently learned defendant's true identity and that the "Cricket Cage" had been burglarized. On November 4, 1976, the sheriff's office obtained a search warrant for a search of defendant's residence. The search warrant affidavit, in part, recited the information obtained from the search of defendant's vehicle on September 30, 1976. In searching defendant's residence, pursuant to the warrant, the officers seized several items of clothing and some coat hangers later identified as coming from the burglarized store. Defendant consented to a search of his car; this search disclosed a coat hanger of the type used by the store.

Defendant was arrested and, after advice of his constitutional rights per *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), admitted the burglary. He was subsequently released after posting a security amount. On November 12, 1976, the officers returned to defendant's residence and seized more items of stolen clothing.

On November 17, 1976, defendant was arrested on a Washington County warrant for burglary of the "Cricket Cage." He was subsequently questioned and admitted several burglaries, including that for which he was arrested.

On November 24, 1976, a Multnomah County Deputy Sheriff executed an affidavit for a search warrant in Clark County, Washington. A search warrant was issued to search the residence of Charles Bell in Vancouver, Washington. The affidavit was based on information gained from the search of defendant's car on September 30, the search of his house on November 4, seizure of the items of clothing from his house on November 12 and the several statements he had made respecting the "Cricket Cage" burglary. In addition, the affidavit recited that a confidential informant had seen the defendant sell garments from the burglary to Charles Bell. A search of Mr. Bell's residence produced clothing taken in the burglary.

The trial court concluded that the stop of defendant was a legitimate traffic stop and not a pretext, that the defendant did not consent to search of his car trunk, that the officer had probable cause to search the trunk without a warrant and that the subsequent searches and confessions were lawful.

The state contends the stop of defendant's vehicle was lawful either as a legitimate traffic stop or under ORS 131.615. The state concedes that even if the stop were lawful this does not create a right to search the vehicle. It is argued, however, that evidence of a crime

[ 673 ]

in plain view may be seized, citing *State v. Robbins,* 3 Or App 472, 474 P2d 772 (1970).

We need not consider whether the stop of defendant's vehicle was lawful. As the state concedes, whether it was a legitimate traffic stop or lawful under the statute (ORS 131.615), there must be some basis beyond justification for the stop to search the vehicle.

■■ We reject the state's contention that the property was seizable under the "plain view" doctrine. The essence of this doctrine is that a police officer who observes evidence of a crime or contraband from a lawful vantage point may seize the evidence. But the state overlooks a critical point in its suggested application of the doctrine. At the time the officer observes the material he desires to seize, he must have probable cause to believe it is seizable, i.e., that it is contraband or evidence of a crime. The plain view doctrine does not authorize seizure of the observed property to simply determine if it is evidence or contraband.

■ At the time the officer observed the television and the clothing in defendant's trunk he had no basis to support a well warranted suspicion the television or clothing was stolen. It was only after searching the trunk of the vehicle and talking to the defendant that he determined the clothing was probably stolen. When When the officer stopped defendant's car he had essentially the same information possessed by the officers in *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977). The Supreme Court in *Valdez,* held the information was insufficient to support a reasonable suspicion (ORS 131.615), which is quantitatively less than probable cause. We conclude there was neither consent nor probable cause to search the vehicle's trunk or seize the contents.

■ Following the unlawful entry of defendant's vehicle the law enforcement agencies utilized the information gained from that search to gather further evidence.

[ 674 ]

The subsequent searches and arrests were tainted by the initial unlawful search and the statements of defendant which followed were likewise tainted. Defendant's motion to suppress the physical evidence seized and statements he made should have been allowed. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *Silverthorne Lumber Co. v. United States,* 251 US 385, 40 S Ct 182, 64 L Ed 319, 24 ALR 1426 (1920).

Reversed and remanded.

**LEE, J.** dissenting.

I would affirm because, in my opinion, the officer had both a reasonable suspicion sufficient to justify the stop (ORS 131.615) and probable cause accompanied by exigent circumstances justifying the warrantless search. Such arose from the officer's observation of the "bag of clothes in the car" and the "tag hanging out of the shirt" which was the kind "you would normally find while the clothes were on the sales rack." These incriminating observations distinguish this case from *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977), on which the defendant relies.

The officer testified, "I followed him because of what I had seen and stopped him because of what I had seen at the house." In *State v. Crockett,* 34 Or App 1019, 1023, 580 P2d 214 (1978), we said:

"* * * Probable cause means 'a well-warranted suspicion.' *State v. Willis,* 24 Or App 409, 412, 545 P2d 1392, *rev den* (1976). It requires 'substantially less than proof beyond a reasonable doubt, but something more than a mere possibility.' *State v. Feehely,* 27 Or App 343, 357, 556 P2d 142 (1976), *rev den* (1977)."

*See also State v. Gilbert,* 24 Or App 907, 911, 547 P2d 632, *rev den* (1976).

The brief interval between the observations and the stop and search should not preclude the stop and

seizure moments later. The trial court correctly denied the motion to suppress.

I would affirm, so I respectfully dissent.