Argued and submitted September 13, reversed and remanded
for trial; affirmed on cross-appeals November 20,
reconsideration denied December 23, 1982,
petition for review denied January 18, 1983 (294 Or 460)

STATE OF OREGON,
*Appellant - Cross-Respondent,*
*v.*
ARTHUR WALLACE EATON et al,
*Respondents - Cross-Appellants.*

(Nos. 81-1296-C, 81-1297-C, 81-1298-C,
81-1299-C, and 81-1300-C, CA A23945)

653 P2d 250

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the briefs were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Paul J. DeMuniz, Salem, argued the cause for respondents - cross-appellants. With him on the brief was Garrett, Seideman, Hemann, Robertson & DeMuniz, P.C., Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

This is a consolidated appeal in which the state seeks reversal of pretrial suppression orders. The trial court entered identical orders in all the cases allowing part of defendants' motion to suppress. Defendants cross-appeal from part of the trial court's order. We reverse the order of suppression and remand for trial.

On July 18, 1981, deputy sheriff Claar obtained a search warrant for defendants' rural property, including a residence and several outbuildings. Deputy Claar was the affiant in the supporting affidavit:

"I, David Claar, being duly sworn, do hereby depose and say the following which is true to the best of my knowledge:

"I am employed by the Josephine County Sheriff's Department as a Deputy Sheriff;

"That Ron Goodpasture, Corporal on the Josephine County Sheriff's Department, has reported to me that on July 25, 1981 he was flying over the Hays Cut-off Road area of Josephine County. He further indicated that this is a F.A.A. regulation 500 ft. min. height flight area and that he flew at an altitude of more than 500 ft above ground level and that while so doing he identified growing marijuana plants. These marijuana plants were approximately 100 feet Southwest of a building that appears to be a dwelling. Approximately 75 feet Southwest of the growing marijuana plants appear to be two other structures. One of the structures appears to be a greenhouse and the other structure appears to be a shed. There also appear to be two red roofed structures Northeast of the residence.

"Further that he reported there were no other structures observed in close proximity to the growing marijuana.

"Ron Goodpasture has informed me that he has had training in the identification of growing marijuana and has participated in raids on confirmed marijuana fields. He has also indicated that in 1980 alone he was involved in over 50 aerial observations of growing marijuana that resulted in subsequent seizures of marijuana on the ground and by confirmation by crime laboratory analysis.

"David Claar has conducted an investigation in this matter and has personally contacted the Josephine County

Surveyor's Office and obtained an aerial photograph of the Hays Cut-off Road area of Josephine County, more specifically Township 39S, Range 8W, Section 36, Willamette Meridian.

"On July 28, 1981, I compared the aerial photograph obtained from the Assessor's Office with the photographs taken at the time of the above airplane over-flight of the area where the aforementioned marijuana was observed. At this time I determined the location of the marijuana and above described buildings.

"On July 28, 1981, I contacted the Josephine County Assessor's Office. I located the assessor's map showing the tax lots in the area where the marijuana was observed. I requested these tax lots be drawn in on the aerial photograph. A cartographer of the Assessor's Office outlined the tax lots on the aerial photograph. By comparing the aerial photograph and the assessor's tax lot map, I determined that the above described marijuana and structures were located On Township 39S, Range 8W, Section 36, Tax Lot 601 Of the Willamette Meridian.

"Further, that I have been employed in law enforcement for 10 years, and it has been my experience based upon 5 years of years [sic] of working involving investigating the growing of marijuana, that in Southern Oregon marijuana plants need considerable cultivation including irrigation and fertilization and that the cultivator generally lives or stays in close proximity to the plants to both care for and guard them due to their high value. It is my further experience that upon harvesting the plants are taken indoors for drying and packing.

"Based upon the above information, I have probable cause to believe that marijuana is being cultivated on the above described real property and that evidence of active cultivation of marijuana and evidence of its cultivator is located thereon. I request the Court issue a search warrant to search the above property described by tax lot number and the above described structures, if any, for all evidence of marijuana, its cultivation, and its cultivator and to seize the same."

The search warrant authorized the search of "Tax Lot 601 of Township 39S, Range 8W, Section 36 in the Willamette Meridian, the Residence and all Outbuildings contained thereon," for "Marijuana, Evidence of its cultivation and Evidence of its cultivators." According to Deputy

Claar's return to the warrant, marijuana and identification papers were seized from the "parents' sleeping quarters," marijuana and various cultivation implements were seized from the "garden area," and marijuana and miscellaneous items were taken from the "house."

The defendants each filed an identical motion to suppress, citing twenty separate grounds. The trial court entered the following order:

"BASED ON the evidence and foregoing Findings of Fact, the Court enters the following Conclusions of Law:

"1.   The allegations set forth by Deputy Claar in regard to the hearsay statements of Corporal Goodpasture's observations made during his July 25, 1981 aerial flyover were permissible and said allegations set forth sufficient information to establish probable cause to believe Corporal Goodpasture did observe growing marijuana.

"2.   The determination of the location of said growing marijuana as set forth in the affidavit by Deputy Claar is satisfactory and the methods used by Deputy Claar are sufficient to establish probable cause as to the location of said marijuana.

"3.   The description of the premises to be searched by the executing officer, as set forth in the search warrant, did describe the premises with sufficient particularity.

"4.   The affidavit failed to set forth any facts or circumstances that would lead the magistrate to conclude that there was probable cause to search the residence or any outbuildings for marijuana or evidence of its cultivation or cultivators.

"5.   Reference in the return to a search on Tax Lot 60 was a clerical error, and the search was actually conducted on Tax Lot 601 as commanded by the search warrant.

"BASED on the above and foregoing Findings of Fact and Conclusions of Law, it is hereby,

"ORDERED that any items seized or evidence gathered by law enforcement officers during the search of any of the residences or other buildings located on the premises described in the search warrant be suppressed and the state shall not attempt to introduce any of said items or evidence of said seizure in the trial of the above-captioned matter."

■ ■   The state contends that the trial court erred in concluding that the affidavit failed to establish probable

cause that the residence and other buildings adjacent to the marijuana field contained evidence of its cultivation. Whether a particular affidavit supports the issuing magistrate's determination of probable cause does not depend on the existence of any particular facts or information. Rather, each affidavit must be examined in a common sense, non-technical manner, looking at the facts recited and the reasonable inferences that can be drawn from those facts. *State v. Mellinger,* 52 Or App 21, 25, 627 P2d 897 (1981); *State v. Harp,* 48 Or App 185, 616 P2d 564, *rev den* 290 Or 171 (1980); *State v. Age,* 38 Or App 501, 590 P2d 759 (1979). Further, where the existence of probable cause is marginal, the decision should be tempered by the preference to be accorded warrants. *United States v. Ventresca,* 380 US 102, 109, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Harvey,* 53 Or App 478, 482, 632 P2d 487, *rev den* 291 Or 893 (1981); *State v. Tidyman,* 30 Or App 537, 541, 568 P2d 666, *rev den* 280 Or 683 (1977).

In *State v. Harp, supra,* the affiant stated that he had seen several marijuana plants growing on the defendant's rural property. He stated that there were no other residences located on the property and that Harp resided there. A warrant was issued for evidence of marijuana, its manufacture, possession, sale and use in the defendant's house and surrounding property. In dismissing the defendant's argument that the affidavit was insufficient to support a finding of probable cause, we stated:

" * * * Reading the affidavit at issue here we find that it is reasonable to infer from the facts presented that the marijuana seen by the officer was cultivated marijuana. The defendant's house was the only residence on the property on which the marijuana was being grown. It is reasonable to infer that the marijuana was being cultivated by defendant because it was growing on his land and he lived in the only residence on that land. Those reasonable inferences give rise to a well-warranted suspicion that marijuana and paraphernalia for its cultivation, manufacture, sale and use would be found in that house. *See State v. Crocket,* 34 Or App 1019, 580 P2d 214 (1978)." 48 Or App at 190.

*But see State v. Melendy,* 49 Or App 441, 619 P2d 952 (1980).

In the present case, the information in the affidavit established that marijuana was under cultivation on

defendants' premises. As in *State v. Harp, supra,* the affidavit noted a single residence on the parcel. Additionally, the land held a greenhouse and several outbuildings which could reasonably be associated with agriculture. The affiant added:

> "Further, that I have been employed in law enforcement for 10 years, and it has been my experience based upon five years * * * of working involving investigating the growing of marijuana that in Southern Oregon marijuana plants need considerable cultivation including irrigation and fertilization and that the cultivator generally lives or stays in close proximity to the plants to both care for and guard them due to their high value. It is my further experience that upon harvesting the plants are taken indoors for drying and packing."

The affidavit and the inferences that could be drawn from it provided a sufficient basis for a well-warranted suspicion that inside the residence and other buildings could be found implements of marijuana cultivation (*e.g.,* irrigation, fertilization and farming tools), as well as specific items of identification linking the operation to the cultivators who lived there. The trial court erred in concluding that the affidavit was insufficient to warrant a finding of probable cause to search the building.

■     On cross-appeal, defendants argue that (1) "* * * the affidavit in support of the search warrant fails to establish probable cause to search when the magistrate must speculate about the height at which the alleged marijuana was observed, and the affidavit fails to indicate the name, qualifications, training and experience of a cartographer used to locate the property on aerial photographs, or his training and experience in the method used to locate the property to be searched," and (2) the "* * * description by tax lot number of property to be searched is [in]sufficient to meet the requirement of 'particularity' enabling executing police to locate both the property site and the particular structures without risking an unlawful intrusion onto the premises of neighbors." As we noted earlier, affidavits must be examined in a common sense, non-technical manner. Under a common-sense standard, the affidavit disclosed that a police officer experienced in aerial marijuana detection had personally observed the plants.The

affiant ascertained the location of the plants by means of official county records. The unnamed cartographer from the assessor's office who assisted in the identification played a minor role in identifying the property and, in any event, his information was confirmed by the affiant.

■      Under the circumstances of this case, the description of the subject premises by tax lot number was sufficiently specific. According to the affiant's information, there was only one residence on the property. There was no indication that any other residence would be found on the premises. *See State v. Maulding,* 29 Or App 511, 564 P2d 729 (1977). We conclude that the description of the rural property in this case was sufficient to enable the executing officer to ascertain with reasonable effort the identity of the place intended to be searched. *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert den* 394 US 951 (1969); *State v. Harvey, supra,* 53 Or App at 481.

Reversed and remanded for trial; affirmed on cross-appeals.