Argued and submitted January 12, affirmed March 2, 1983

STATE OF OREGON,
*Appellant,*
*v.*
CRAIG FRANCIS HAINES,
*Respondent.*

(10-81-08625; CA A25334)

STATE OF OREGON,
*Appellant,*
*v.*
STEPHEN RICHARD ELLIOT,
*Respondent.*

(10-81-08624, CA A25335)
(Cases Consolidated)
659 P2d 972

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Robert J. McCrea, Eugene, argued the cause for respondents. With him on the brief was Morrow, McCrea & Divita, P.C., Eugene.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

**NEWMAN, J.**

The state appeals pretrial orders granting defendants' motions to controvert search warrants and to suppress evidence seized under them. We affirm.

Defendants were charged in separate indictments with unlawful manufacture of marijuana, a felony, in violation of ORS 475.992. Because the affidavits that support the search warrants, the search warrants themselves, the motions to suppress and controvert, the stipulated facts and the court orders allowing the motions were identical in each case, the cases were, by consent of the parties, consolidated on appeal.[1]

The affidavit of Officer Smit submitted to obtain the search warrant stated:

" * * * * *

"I am an investigator with the Oregon State Police and have been so employed for the past seven years. I have had approximately 100 hours training in the identification of controlled substances including the identification of marijuana, both growing and processed. In the course of my duties as a police officer I have seized marijuana on number occasions [sic] and have had my opinion concerning this substance confirmed by subsequent laboratory analysis.

"On the 14th day of August, 1981, I flew over property adjacent to the Siuslaw River identified on tax lotted map number 17-09-36, lots number 400 and 402, identified in the shaded area of the map attached to this affidavit and incorporated by reference herein. I observed numerous growing marijuana plants in cultivated areas on this property, several of these areas had been cleared from surrounding foliage and timber.

"Several photographs were taken of the growing marijuana plants during this aerial flight from above miminim Federal Aeronautical Administration altitude, which are attached to this affidavit designated Exhibits A, B, and C on the back, and incorporated by reference herein. I observed numerous other growing marijuana plants in addition to those depicted in the photographs attached.

---

[1] We will consider the consolidated appeals as one proceeding and refer to the affidavits, warrants, motions, stipulated facts and orders in the singular.

"On at least two other occassions [sic] I have observed growing marijuana from the air and have had my observations confirmed.

"Through checking tax records I have learned that the property described in the attached tax lotted map number 17-09-36 is owned by James Peter Rial and Marilyn Rial. The property address is 13056 Stagecoach Road, Swisshome, Lane County, Oregon. To reach the property when traveling on Highway 36 westward towards Florence, you turn left on Stagecoach Road and travel approximately six miles roughly southeast. The entrance to the property by the residence is identified by a cable crossing that crosses the Siuslaw River. On August 14, 1981, Deputy Ronald Treadwell from the Lane County Sheriff's Office was aboard the airplane from which the above-described observations were made. Deputy Treadwell informed me that he had responded to the location identified on the attached tax lot map on past occasions on police business and identified lots 400 and 402 as being the correct location of the cultivated marijuana plants.

"I observed at least seven different buildings and several tents and other structures located on this property. From my experience as a police officer in seizing cultivated marijuana I know that it is necessary to use buildings and structures for the purposes of drying and processing marijuana and also for storing implements and tools necessary to its cultivation. I know from past experience that it is common for persons growing marijuana in the quantity observed on this sight to possess irrigating schedules, ledger books, and publications concerning the growing and processing of marijuana for sale.

"WHEREFORE your affiant has probable cause to believe and does believe that there is evidence of the crime of Unlawful Manufacture of Controlled Substances, specifically marijuana, located at 15036 Stagecoach Road, Swisshome, Lane County, Oregon in the shaded in area on tax lotted map 17-09-36, specifically on lot 400 and 402. Your affiant requests the court to issue a search warrant for the lots depicted in the attached tax lotted map for the grounds, building, and structures located thereon for evidence of the crime of Unlawful Manufacture of Controlled Substance, marijuana.

"Dated this 18th day of August, 1981.

/s/ Robert J. Smit

Robert Joe Smit

" * * * * *"

Attached as exhibits to the affidavit were the photographs and tax lot map referred to in the affidavit. The search warrant recited that the magistrate had received information on oath "that the crime of Unlawful Manufacture of Controlled Substances is currently located at 15036 Stagecoach Road, Swisshome, Lane County, Oregon, in the shaded in area on tax lotted map 17-09-36, specifically on lot 400 and 402" and commanded the police "to search the above-described area and its curtilage for the grounds, buildings, and structures located thereon for evidence of the crime of Unlawful Manufacture of Controlled Substances."

In the search pursuant to the warrant the police seized evidence of unlawful manufacture of marijuana on both lots 400 and 402. Defendants moved to suppress only the evidence seized on lot 400.[2] Defendants' motion to suppress and controvert stated in substance that the facts recited in Smit's affidavit were false in that:

(1) no marijuana was growing on, or had ever grown on, lot 400; and

(2) James Peter Rial and Marilyn Rial were not the mutual owners of lot 400 and lot 402.

The parties stipulated at the hearing on the motion as follows:

" * * * It is agreed and stipulated between the State and the defense that the evidence would be that there was no marijuana growing on tax lot 400 and none was identified or seen as growing on tax lot 400, and that tax lot 400 and tax lot 402 are not jointly owned by a James Peter Rial and Marilyn Rial but in fact tax lot 402 is owned by Marilyn Rial and tax lot 400 is — and by 'is' I mean at the time of this occurrence — owned by a number of people. Those people being as follows: James Peter Rial, Craig Francis Haines, one Defendant here, Mike Martin, Ruth Ann Howden, Donald John McDonald, Nicole Cabellera, Stephen Richard Elliott, the other Defendant here, and — and those are, I believe, the facts that are stipulated and agreed between the defense and the prosecution.

---

[2] Defendants conceded on appeal that their motions to suppress only went to the evidence seized under the warrant on lot 400 even though their motions, and the order of the court allowing them, could be interpreted to suppress all of the evidence seized pursuant to the search warrant, including that seized on lot 402. It is conceded by defendants that the evidence seized on lot 402 is not suppressed.

"In addition, the defense would be prepared to offer evidence that there were residences and buildings on tax lot 402 and on tax lot 400 both, that there was a road that crossed — well, there was a trolley across the river and that came onto tax lot 400 and then a road that proceeded onto tax lot — not a road, but a trail or path on tax lot 402. But there was another road, an entrance that came into tax lot 402 from the other end from what would be the downstream end. It did not come through and go onto tax lot 400. And there was both a ford and a trolley — that is one of those apparatuses that go across, that goes across the river.

"That in addition to the marijuana that was seen growing on 402 that there were additional marijuana patches on downstream continuing into the vicinity of other residences that were as close or probably as close to tax lot 402 and its marijuana growing as the residences or the buildings that were seen on tax lot 400."

Accordingly, it is undisputed that Smit's affidavit was not accurate in the following particulars:

(1) he did *not* observe growing marijuana plants in cultivated areas on lot 400, because none was growing on lot 400; and

(2) there was *not* common ownership of lot 400 and lot 402, because lot 402 was owned only by Marilyn Rial, and she did not own any interest in lot 400.

Furthermore, although officer Treadwell identified Lots 400 and 402 to Smit as the correct location of the cultivated marijuana plants, Treadwell was wrong that lot 400 was a location of cultivated marijuana plants.

The court allowed the motion.

■ When an affidavit supporting a search warrant contains inaccuracies, as here, the court must determine whether the inaccuracy requires suppression. ORS 133.693. There is no evidence here that the inaccuracies in the affidavit were intentional or made in bad faith. Nonetheless, we are required to re-examine the entire affidavit in light of the controverting statements given at the hearing. *State v. McManus,* 267 Or 238, 251, 517 P2d 250 (1973); *State v. Harwood,* 45 Or App 931, 935, 609 P2d 1312, *rev den* 289 Or 337 (1980). In *State v. Diaz,* 29 Or App 523, 525-26, 564 P2d 1066 (1977), this court stated:

"If, during the hearing on a motion to suppress evidence obtained by search warrant, the defendant establishes the information presented to the issuing magistrate was not offered in good faith, was not accurate and was not truthful, the court then shall determine if the issuing magistrate could, relying on the accurate parts of the affidavit and disregarding the inaccurate parts, have determined there was probable cause to search. ORS 133.693(5); *State v. McManus,* 267 Or 238, 517 P2d 250 (1973); *State v. Hughes,* 20 Or App 493, 532 P2d 818 (1975). The testimony at the suppression hearing can detract from the affidavit to the extent that it proves inaccuracies, but the testimony cannot add to the affidavit because information known to the affiant or his informers, but not communicated to the issuing magistrate, cannot be the basis of a probable cause determination. *State v. Hughes, supra. See also* ORS 133.545(3). In determining the validity of this warrant we examine the information contained within the affidavit, excising inaccurate information, to determine if there is probable cause to search the residence where defendant was living."[3]

Clauses that defendants want excised from the affidavit in each case include references to both lots 400 and 402. What is to be excised from the affidavit, however, are only the references to lot 400:

(1) that Smit observed numerous growing marijuana plants in cultivated areas on lot 400;

(2) that Smit learned that lot 400 described in the lotted map number 17-09-36 was owned by James Peter Rial and Marilyn Rial; and

(3) that Treadwell identified lot 400 as being a correct location of cultivated marijuana plants.

■ ■    The question to be decided is whether the magistrate could have found that the remaining facts in the affidavit establish probable cause to support the search on Lot 400. Probable cause is less than "proof beyond a reasonable doubt" but is more than a mere possibility.

---

[3] We note that *State v. McManus,* 267 Or 238, 517 P2d 250 (1973), states the question as: Would the magistrate have issued the warrant if he had known the correct facts? We assume that *McManus* did not intend to change the rule that we may consider only the facts brought to the magistrate's attention in determining the sufficiency of the affidavit. In any event, whether or not the magistrate could be deemed to have known all the facts set forth in the stipulation of the parties, the result reached is the same.

*United States v. Ventresca*, 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Metler*, 6 Or App 356, 487 P2d 1377 (1971). The affidavit must set forth facts and circumstances tending to show that the things constituting the objective of the search are probably located in the place to be searched. Where the existence of probable cause is marginal, the decision should be tempered by the preference to be accorded warrants. *United States v. Ventresca, supra; State v. Eaton*, 60 Or App 176, 653 P2d 250, *rev den* 204 Or 460 (1982).

■■ ■■ The facts accurately established by Smit's affidavit are:

(1) lot 400 was contiguous to and upstream from lot 402, and both lots fronted on and were on the same side of the Siuslaw River;

(2) lot 400 was not accessible by road, but only by cable-crossing over the Siuslaw River or by a footpath from lot 402;

(3) a footpath ran between lot 400 and 402;

(4) both lots were in a rural isolated area;

(5) there were buildings, tents and other structures located on each of the lots;

(6) lots 400 and 402 had a common address, 15036 Stagecoach Road, Swisshome, Lane County, Oregon;

(7) there was cultivated marijuana growing on lot 402;

(8) Marilyn Rial owned lot 402; and

(9) Smit was experienced in investigating and identifying marijuana and knew that buildings are used for processing marijuana and to store records and also tools used in marijuana cultivation.

The tax lot map described two separate lots. When a warrant describes multiple premises, it must set forth facts demonstrating probable cause to search each place. 2 LaFave, Search & Seizure § 4.5 at 83 (1978). The lots had a common address, but this fact was offset by the lack of common ownership. Smit's observation of marijuana cultivation on lot 402 does not justify a belief that evidence of marijuana manufacture would probably be found on adjacent lot 400. *See State v. Eaton, supra; State v. Harp,*

48 Or App 185, 616 P2d 564, *rev den* 290 Or 171 (1980). In both *Eaton* and *Harp,* contrary to the circumstances here, the affidavits accurately stated that cultivated marijuana was growing on the property to be searched. The existence of buildings on lot 400 as well as lot 402, and of a path between the lots, in the absence of common ownership and cultivated marijuana growing on lot 400, also does not permit the inference that evidence of marijuana manufacture would probably be found on lot 400. We hold that the affidavit, with the inaccuracies excised, is insufficient to establish probable cause to search lot 400.

Affirmed.