Argued and submitted April 27, 1983, resubmitted In Banc May 2, affirmed June 13, reconsideration denied September 7, petition for review allowed November 13, 1984 (298 Or 238) See 299 Or 1, 697 P2d 548 (1985)

## STATE OF OREGON,
*Appellant,*

*v.*

## JANIE LEA HARP,
*Respondent.*

(10-79-08181; CA A24954)

## STATE OF OREGON,
*Appellant,*

*v.*

## GRANDVILLE GENE HARP, JR.,
*Respondent.*

(10-79-08180; CA A25012)
(Cases Consolidated)

685 P2d 432

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Dan E. Neal, Eugene, argued the cause for respondents. With him on the brief was Neal & Krambs, Eugene.

NEWMAN, J.

Van Hoomissen, J., dissenting.

## NEWMAN, J.

The state appeals pretrial orders granting defendants' consolidated motions to controvert the affidavit supporting a search warrant and to suppress evidence seized under it. ORS 138.060(3). In *State v. Harp,* 48 Or App 185, 616 P2d 564, *rev den* 290 Or 171 (1980), *(Harp I),* this court reversed an earlier suppression order. We considered the motion to suppress on the basis of the face of the affidavit because the trial court had not considered defendant's motion to controvert. Now we also review the motion to controvert and the evidence thereunder and affirm the second order of suppression.

Defendants, husband and wife, were charged in separate indictments with unlawful manufacture and possession of marijuana, opium or opium derivative. The trial court suppressed the items found in the residence, the adjacent barn or shed and the area immediately surrounding such structures. It did not suppress the marijuana plants seized elsewhere on defendants' property, and defendants do not challenge here the seizure of those plants.

As explained in *Harp I,* the police obtained a warrant to search defendants' residence and "its curtilage" for marijuana and evidence of its manufacture, possession, sale and use. The affidavit supporting the search warrant stated:

"That I am a Corporal with the Oregon State Police Department, and have been so employed for the last seven years. That I have had approximately 300 hours in the identification of narcotics and other controlled substances, including marijuana. That I have identified marijuana in its plant form in the past and have subsequently had that identification confirmed by laboratory analysis.

"That on August 5, 1979, the Oregon State Police Department, Florence Office, received information that marijuana was growing on property in the Florence area. That property is located at 09555 North Fork Siuslaw River Road, and consists of approximately 49.82 acres. This land is bordered on one side by U.S. Forest Service Road No. 2570, and the road is open to the public at large for travel, and can be described as a twenty-foot wide gravel road. That on August 15, 1979, at approximately 4:40 p.m. I drove up on Forest Service Road 2570, and while stationed on that road in my vehicle, I could see several marijuana plants growing on the

property located at 09555 North Fork Siuslaw River Road, and that they were approximately 7 to 8 feet tall. That from my lawful vantage point on the Forest Service Road I could see some of the plants with the aid of binoculars, and one plant with the naked eye. With the aid of binoculars I was able to positively identify the plants as marijuana plants.

"That I can further describe the property at 09555 North Ford Siuslaw River Road as being designated on a Lane County Section Map as plot number 17 10 19, 201 and that Eichler County Road is, in fact, the main entrance road to the residence located at 09555 North Fork Siuslaw River Road. That the land designated as plot number 17 10 19, 201 has contained within its 49.82 acres one residence which could not be seen from my vantage point on the Forest Service Road except for a portion of the roofline. That I further know that there are no other residences located on the property described above, and that a man and his wife by the name of Mr. and Mrs. Grandville Gene Harp, Jr. reside there.

"That from my previous experience as a police officer, I know that individuals who grow marijuana in and around their residences also have items and paraphernalia for processing marijuana, such as drying pans, sifters, drying marijuana, grow lights, and other paraphernalia used in the manufacture, sale, possession and use of marijuana.

"That based upon the preceding information, I have probable cause to believe, and do believe, that evidence of the crime of Manufacture of a Controlled Substance, to-wit, marijuana, is presently located on the premises described as 09555 North Fork Siuslaw River Road, a plot of land designated as 17 10 19, 201 on the Lane County Section Map, and containing 49.82 acres, and also having within the above-described acreage one single-family residence located in Lane County, Oregon; and therefore, your affiant prays that this court issue its warrant for the search of the above-described premises and its curtilage for the controlled substance marijuana and evidence of its manufacture, possession, sale and use."

In the first appeal, the trial court found the affidavit insufficient on its face and granted defendants' motion to suppress. We reversed, stating:

"* * * Reading the affidavit at issue here we find that it is reasonable to infer from the facts presented that the marijuana seen by the officer was cultivated marijuana. The defendant's house was the only residence on the property on

which the marijuana was being grown. It is reasonable to infer that the marijuana was being cultivated by defendant because it was growing on his land and he lived in the only residence on that land. Those reasonable inferences give rise to a well-warranted suspicion that marijuana and paraphernalia for its cultivation, manufacture, sale and use would be found in that house. * * *" *State v. Harp, supra,* 48 Or App at 190.

On remand, the trial court heard the motion to controvert and made the following findings:

"* * * [T]he affiant misstated a number of matters in the affidavit and failed to include in the affidavit matters which, if included, would have substantially altered the fact pattern upon which the magistrate reached his decision of probable cause.

"These omissions and mistakes were for the purpose of presenting to the magistrate the most favorable picture possible for obtaining the relief sought. These include:

"(1) The statement that the marijuana could be identified from the officer's viewpoint with binoculars when, in fact, identification could not be made until a much, much stronger spotting scope was employed.

"(2) The viewpoint of the affiant did not border on the subject property but was some distance therefrom, this misstatement contributing to an overall impression that the affiant was close to the location of the marijuana and other parts of the defendant's property and thereby was more accurately able to observe and describe the scene.

"(3) The distance from the growing marijuana to the residence was not mentioned although evidence available to the officer and at the controverting hearing was that it was three-eights to three-fourths of a mile. The wording of the third paragraph of the affidavit conveys the impression to the reader that the residence and the growing marijuana were in the same general area of the property whereas this was known not to be the case. The affiant failed to mentioned that a number of trips were made to the viewpoint and the property placed under observation, but that at no time was there seen any human activity in the area of the marijuana plants and no evidence of any trips between the marijuana area and the residence or that there was no evidence of a path or roadway between the residence and the observed marijuana.

"By reason of the failure to provide the above information, the magistrate's inference drawing process has been disrupted. Upon reexamination of the affidavit as modified by

the above, I find there was not probable cause to support a warrant to search the residence and the area immediately around it, that the evidence in this area was not discovered inadvertently and that there were no exigent circumstances then and there existing."

We now re-examine the entire affidavit in the light of the evidence given at the hearing on the motion to controvert. *State v. McManus,* 267 Or 238, 251, 517 P2d 250 (1973); *State v. Haines,* 62 Or App 163, 168, 659 P2d 972 (1983); *see* ORS 133.693. The court cannot add information to the affidavit to provide the basis for a probable-cause determination if that information was not known to the magistrate. Controverting evidence can detract from the affidavit but cannot be used to rehabilitate an insufficient affidavit. *State v. Haines, supra,* 62 Or App at 169 n 3; *State v. Hughes,* 20 Or App 493, 532 P2d 818 (1975).

In *State v. Diaz,* 29 Or App 523, 564 P2d 1066 (1977), the defendant filed a motion to suppress and a supplemental motion to controvert the affidavit. The two motions were heard together. We stated:

"The testimony at the suppression hearing can detract from the affidavit to the extent that it proves inaccuracies, but the testimony cannot add to the affidavit because information known to the affiant or his informers, but not communicated to the issuing magistrate, cannot be the basis of a probable cause determination. *State v. Hughes, supra. See also* ORS 133.545(3). In determining the validity of this warrant we examine the information contained within the affidavit, excising inaccurate information, to determine if there is probable cause to search the residence where defendant was living." 29 Or App at 525.

The issue here is whether the affidavit, with the inaccuracies deleted and taking into consideration the controverting evidence, states facts that show probable cause to search the residence and other structures on the land. When the inaccuracies in the affidavit shown by the controverting evidence are deleted, the affidavit states:

(1) The experience of the affiant police officer in identifying marijuana in plant form and, from his experience, that he knew that individuals who grow marijuana in and around their residence also have items and paraphernalia for processing marijuana, such as drying pans, sifters, drying

marijuana, growing lights and other paraphernalia used in the manufacture, sale, possession and use of marijuana.

(2) The defendants owned the property.

(3) Defendants' property was 49.82 acres.

(4) Defendants' residence was the only residence on the property.

(5) The affiant observed "several" marijuana plants seven to eight feet tall growing on the property some distance from the residence.

The controverting evidence showed: Defendants' land was steep and wooded and was not bordered by the Forest Service road from which the affiant made his observations; affiant's vantage point on the road was some distance away from the edge of defendants' property and was five-eighths to three-quarters of a mile away from the marijuana; the marijuana was not observed from affiant's vantage point with binoculars, or seen with the naked eye, but by use of a high-powered spotting scope; the marijuana was not observed "in and around" defendants' residence but was three-eighths to three-quarters of a mile away from it and near the northern boundary of defendants' property;[1] and affiant made five trips to the vantage point but did not observe any evidence of human activity in the area of the marijuana and saw no paths or trails connecting the marijuana and the residence.

■ In *Harp I* we inferred from the face of the affidavit that the marijuana on defendants' land was cultivated and that defendants were cultivating it, because it was growing on defendants' land and they lived in the only residence on the land. In *State v. Anspach,* 68 Or App 164, 682 P2d 786 (1984), we stated:

"In *Harp,* the affidavit stated only that the officer had identified 'several' marijuana plants growing on defendant's property, which was 50 acres, but did not state whether the plants were growing close together, whether there was any

---

[1] In *State v. Eaton,* 60 Or App 176, 653 P2d 250 (1982), *rev den* 294 Or 460, 658 P2d 1162 (1983), the marijuana plants were approximately 100 feet southwest of a dwelling and approximately 75 feet northeast of a greenhouse and shed. In *State v. Blaauw,* 64 Or App 426, 667 P2d 579 (1983), the marijuana plants were in the vicinity of the structures.

objective evidence that the plants were being cultivated or how far the plants observed were located from the residence. We attempted to read the affidavit in a 'common sense, non-technical manner' and stated that it was reasonable to infer that the marijuana seen by the officer was cultivated and that, because the marijuana was growing on defendant's land, it was reasonable to infer that it was being cultivated by defendant. We concluded that those reasonable references gave rise to probable cause to believe that marijuana and paraphernalia for its cultivation, manufacture, sale and use would be found in defendant's house located on the property. We now think we went too far in *Harp* in attempting to resolve any doubts by the preference to be accorded to warrants." 68 Or App at 169-70.

We then state in *Anspach* that, if marijuana is observed growing on land, the affidavit must meet two requirements to state probable cause to search the residence or other buildings on the premises for marijuana and evidence of its manufacture, cultivation or sale:

"We now hold that, under Article I, section 9, of the Oregon Constitution, an affidavit must fulfill two requirements. First, it must set forth objective observations that would permit a disinterested magistrate to conclude that there is probable cause to believe that the persons residing on the premises have some relationship to the plants. Without attempting to catalogue the kind of objective observations that would be sufficient, some examples may be useful: a statement of the approximate number of plants observed, their approximate size and a description of their relationship to one another (*e.g.,* whether in rows or in a specific identifiable patch); whether the ground around them has been worked, or has been watered or fertilized; whether there is an observable path between the plants and any of the buildings, or that their proximity to the residence makes it probable that the residents are aware of their presence.

"* * * [E]ven if the affidavit fulfills that first requirement, it is not sufficient to expand the scope of the search to include the residence or other buildings on the premises. * * * To justify a search of those buildings, the second requirement must be met: the affidavit must contain additional facts to support probable cause to believe that marijuana or certain kinds of implements of cultivation or paraphernalia for processing or sale of marijuana are probably in the building to be searched." 68 Or App at 171-72.

In *Anspach,* we found in the affidavit in that case:

"* * * [N]othing to support the conclusion that the marijuana was being cultivated or that the plants were so located * * * as to give rise to probable cause to believe that defendants had knowledge of their presence and were caring for them. Because the affidavit does not satisfy the first requirement, it was not sufficient to support a warrant to search the residence and building. To the extent that *State v. Harp, supra,* is inconsistent with this opinion, it is overruled." 68 Or App at 172.

Here we must decide if the affidavit, when read in a "nontechnical, common-sense manner," with the inaccuracies deleted, and taking into consideration the controverting evidence, satisfies the first requirement of *Anspach.*[2] Does it support the conclusion that there is probable cause to believe that defendants have some relationship to the marijuana plants? We hold that it does not. Here the corrected affidavit does not state sufficient facts to permit the inference that defendants had some relationship or link to the "several marijuana plants" on their property. The affidavit does not state that the plants were growing in rows or in any pattern, or that the earth had been tilled, or that there was other evidence of cultivation to indicate that the marijuana was not wild, such as irrigation, fertilization or pruning, or that there were any agricultural buildings, tools or vehicles located near to the marijuana or observed anywhere on defendants' 50 acres, or that there was any evidence of human activity in and around the marijuana, or that there was any path or road connecting the marijuana to the defendants or to the residence three-eights to three-quarters of a mile away. The first requirement of *Anspach* is not met simply because defendants owned the 50-acre parcel and lived in the only residence on the land. Accordingly, the corrected affidavit does not state probable cause to support a warrant to search the residence, the adjacent barn or shed and the area immediately surrounding those structures.

Affirmed.

---

[2] Defendants have not argued any state constitutional question, but have referred only to the Fourth Amendment to the United States Constitution. We decided *Anspach* under Article I, section 9, of the Oregon Constitution but stated, "We have no reason to believe the analysis would be different under the federal constitution." 68 Or App at 171, n 2.)

**VAN HOOMISSEN, J.,** dissenting.

The issue is whether, after deleting the acknowledged inaccuracies in the affidavit, the issuing magistrate had "some substantial basis," *Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983), for concluding that there was probable cause to believe contraband or evidence of a crime would be found in defendants' residence, outbuildings and the immediately surrounding area.[1] I conclude that he did. Therefore, I would reverse the second suppression order.

The affiant stated that with the aid of binoculars he saw and was able to identify several marijuana plants growing on defendants' property. In fact, identification was made with a spotting scope. Substitution in the affidavit of the words "spotting scope" for the word "binoculars" would not alter the fact that the affiant saw several marijuana plants growing on defendants' property. This acknowledged inaccuracy had no bearing on the question of probable cause.

The affiant stated that he observed the marijuana from a "Forest Service" road bordering defendants' property. The evidence established that defendants' property is not bordered by a Forest Service road. The trial court concluded that affiant's statement created the impression that he was closer to defendants' property than he actually was, thus enabling him to observe more accurately. Still, there was evidence that from a lawful vantage point the affiant saw marijuana growing on defendants' property. The proximity of defendants' property to a Forest Service road bears no relevance to the ultimate issue, *i.e.,* the affiant's ability to see the marijuana. Therefore, it is irrelevant to the question of probable cause.

The trial court also faulted the affiant's omission from his affidavit of facts about the distance from the marijuana to defendants' residence, the number of trips he made to the place where he made his observations, the absence of human activity near the marijuana, and the absence of a direct

---

[1]The trial court did not suppress evidence of 393 marijuana plants found growing on defendants' property. Defendants acknowledge that the state may proceed against them with that evidence regardless of the outcome here. *See Oliver v. United States,* ____ US ____, 104 S Ct 1735, 80 L Ed 2d 214 (1984); *Maine v. Thornton,* ____ US ____, 104 S Ct 1735, 80 L Ed 2d 214 (1984).

path or roadway between the marijuana and defendants' residence. I do not agree with the trial court's *de novo* subjective conclusion that those omissions disrupted the magistrate's inference-drawing process. *See State v. McManus,* 267 Or 238, 251, 517 P2d 250 (1973); *State v. Hermach,* 53 Or App 412, 632 P2d 466 (1981); *see also Ramia v. State,* 471 A2d 1064, 1066 n 2 (Md App 1984). I would defer to the magistrate.

The area surrounding the marijuana was rural and heavily forested. Defendants' residence was the sole residence on the property. Even had the magistrate known the actual distance between the marijuana and defendants' residence, probable cause still existed. Further, that the affiant observed the marijuana plants on more than one occasion would strengthen, rather than weaken, his affidavit. The absence of human activity near several 7- to 8-foot marijuana plants did not preclude a reasonable inference that someone was cultivating them. As Judge Richardson observed in his dissent in *State v. Anspach,* 68 Or App 164, 682 P2d 786 (1984):

> "* * * The existence of growing marijuana plants on a single piece of property containing one residence may not be sufficient to prove beyond a reasonable doubt that the residents knowingly possessed or manufactured the drugs, but it does not defy common sense to conclude that there is a probability that the plants and residents are connected."

The failure of the affidavit to note the absence of a direct path or roadway between the marijuana and defendants' residence would not preclude a reasonable inference that defendants had access to all their property. I know of no requirement that an affiant state what he did *not* see or what did *not* occur. I suggest that such a requirement would be unrealistic.

The trial court concluded that the affidavit conveyed the impression the residence and the marijuana were in the same general area of defendants' property, whereas this was known by the affiant to be inaccurate. That is not controlling. Marijuana plants were observed growing on defendants' property. Defendants' residence was the only one on the property. That evidence, together with additional evidence in the affidavit, could give the magistrate "some substantial basis" for concluding that implements and items utilized or produced in the cultivation of marijuana would be found in defendants' residence and its immediate surroundings. The trial court's conclusion that the affidavit was deficient is little more than a

repetition of contentions we have already rejected in this case. *See State v. Harp,* 48 Or App 185, 616 P2d 564, *rev den* 290 Or 171 (1980).

As in *State v. Anspach, supra,* the majority misapprehends the standard of review in this case. In *United States v. Ventresca,* 380 US 102, 109, 85 S Ct 741, 13 L Ed 2d 684 (1965), the Supreme Court said:

> "* * * If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. *Technical requirements of elaborate specificity once enacted under common law pleadings have no proper place in this area.*" 380 US at 108. (Emphasis in original.)

In *Illinois v. Gates, supra,* the Supreme Court explained:

> "* * * The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place. *And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. Jones v. United States, supra,* 362 US at 271, 4 L Ed 2d 697, 80 S Ct 725, 78 ALR2d 233. * * *" (Emphasis added.) 462 US at 238.

*See Massachusetts v. Upton,* ___ US ___, 104 S Ct 2085, 80 L Ed 2d 721 (1984). Examined in the light of *Gates,* the affidavit here is sufficient. No state constitutional issue is presented. To the extent that the sufficiency of the affidavit is doubtful or marginal, I would defer to the magistrate.[2] The majority

---

[2]In *Massachusetts v. Upton, supra,* the United States Supreme Court stated:

"The Supreme Judicial Court also erred in failing to grant any deference to the decision of the magistrate to issue a warrant. Instead of merely deciding whether the evidence viewed as a whole provided a 'substantial basis' for the magistrate's finding of probable cause, the court conducted a de novo probable cause determination. We rejected just such after-the-fact, de novo scrutiny in Gates. 103 S.Ct., at 2331. 'A grudging or negative attitude by reviewing courts toward warrants,' United States v. Ventresca, 380 U.S. 102 (1965), is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be

primarily relies on *State v. Anspach, supra.* In my opinion, that case was wrongly decided and is factually distinguishable.

Finally, I see no compelling reason why the exclusionary rule should be applied here. *See State v. Anspach, supra* (Van Hoomissen, J., dissenting). Again, as in *Anspach,* the majority holds that it is the *magistrate* who has blundered, not the constable. Under such circumstances, the prime purpose of the rule, to deter future unlawful *police* conduct, is not well served.

Richardson, J., joins in this dissent.

---

the case. Gates, supra, at 2331 n. 10. A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." ____ US at ____.

In a footnote in *Massachusetts v. Upton, supra,* the Court stated:

" 'If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring "the individual whose property is searched or seized of the unlawful authority of the executing officer, his need to search, and the limits of his power to search." United States v. Chadwick, 433 U.S. 1, 8 (1977).' Gates, supra, at 2331." ____ US at ____.