Argued and submitted November 19, 1984, reversed and remanded March 20, 1985

STATE OF OREGON,
*Respondent,*

*v.*

LESLIE DIANNE PAYNE,
*Appellant.*

(42354; CA A32240)

STATE OF OREGON,
*Respondent,*

*v.*

WALTER ROY PAYNE,
*Appellant.*

(42355; CA A32241)
(Cases consolidated)

696 P2d 1147

Thomas L. Gallagher, Corvallis, argued the cause for appellants. With him on the briefs was Michael D. Barker, Corvallis.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Robert E. Barton, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendants appeal their convictions for manufacture and possession of a controlled substance, marijuana. ORS 475.992. They contend that their motion to suppress evidence seized from their residence pursuant to a search warrant should have been granted. We reverse and remand for a new trial.

There are two search warrants involved in this case. During an aerial search for marijuana on July 22, 1983, Oregon State Police Officer Nelson observed a patch of marijuana plants located between two homes, one owned by defendants and the other owned by their neighbors, the Starbecks. Later that day, he submitted an affidavit for a search warrant which stated in material part:

> "As a result of my prior observations in Benton County, it is my experience that marijuana is grown in significant quantity in western Benton County. In addition, on July 21, 1983, I received confidential information regarding the possible location of growing marijuana at several sites near Corvallis.

> "In order to corroborate the information, the Department of State Police assigned an aircraft to conduct an aerial surveillance on July 22, 1983, of the various locations at which marijuana was thought to be growing.

> "Riding as an observer in the aircraft, I directed the pilot to the vicinity of Lewisburg, which is approximately four miles north of Corvallis, in Benton County. At about 12:55 p.m. from an altitude of 2,800 feet sea-altitude, which is approximately 1,500 feet above ground, I observed a patch of growing marijuana plants adjacent to Northwest Rosewood Drive. I photographed the marijuana. Two of those photographs are attached hereto as Exhibit A. I then compared my visual observations and photographs with a map obtained from the Benton County Assessor's office.

> "From my review of the map, a copy of which is attached as Exhibit B, I determined that the observed marijuana is located on the south border of tax lot 1300 and the north border of tax lot 1100 as indicated on Exhibit B.

> "I then drove to Rosewood Drive and observed that the lots involved are further described as 5982 N.W. Rosewood Drive and 6030 N.W. Rosewood Drive.

"It has been my experience and training that the cultivation of marijuana is associated with the following: irrigation equipment, earth-tilling equipment, fertilizer, and records of planting dates and growth of the marijuana. It has also been my training and experience that the harvesting and drying of the marijuana is associated with the following: scissors and clippers for manicuring; flat pans and racks for drying; and plastic bags for packaging. The described items are, in my experience, generally stored on the same property as the marijuana.

"Based on the above information, I pray the Court to issue a warrant to search the described property for the items described in the preceding paragraph, for marijuana, and for records of other indicia of the identity of the person or persons cultivating or possessing the marijuana."

Attached to the affidavit were two aerial photographs showing the location of the marijuana. The photographs showed the patch to be located in a wooded area between defendants' home and the Starbecks' home. Also attached was a map with a circle drawn around the purported location of the patch across the border between tax lot 1100 and tax lot 1300. Defendants own tax lot 1300, and the Starbecks own tax lot 1100.

The first warrant commanded a search of "[t]he land located on the south border of tax lot 1300 and the north border of tax lot 1100 as indicated on [the attached aerial photographs and map] in Benton County, Oregon." The police officers assigned to serve the first warrant served copies of the warrant at both defendants' and the Starbecks' residences. The two officers who went to the Starbecks' residence received permission to search the Starbecks' property. Officers Nelson, Jincks and Sitton went to defendants' residence. Nelson proceeded directly toward the marijuana patch, located south of defendants' home. He went around to the south side of the home, and at its southwest corner he discovered a coiled garden hose and a path leading down a hill. The path led to the marijuana patch. The marijuana plants were located in a clearing carved out of the center of a thicket of blackberry bushes. The only access to the plants was a tunnel cut through the blackberries from the north side, and the entrance of the tunnel faced north toward defendants' home.

In the meantime, Jincks attempted to serve the first search warrant. He knocked on defendants' front door but received no answer. He heard a stereo playing inside, so he proceeded to go around to the back of the house to determine whether anyone was at home. Because Nelson had gone southerly, Jincks decided to go to the back of the house around the north side. He went around an electric fence surrounding a small garden, and at the north side of the home he discovered five marijuana plants growing in buckets. He proceeded around the house and, finding no one home, joined Nelson at the marijuana patch. They seized the 37 marijuana plants in the patch, then returned to defendants' home and seized the five potted marijuana plants.

Officer Nelson then requested a search warrant for defendants' home on the basis of the following affidavit:

"I, Eric Karl Nelson, being first sworn on oath depose & say that:

"I was the affiant who earlier this date applied for and received from the above Court a search warrant directing the search of land located adjacent to Northwest Rosewood Drive near Corvallis. A warrant was issued by the Honorable Henry R. Dickerson at approximately 7:30 pm this date. The warrant was executed at 8:40 pm. Preparation of this affidavit began at 9:45 pm.

"I hereby incorporate my earlier affidavit by reference.

"Upon execution of the earlier warrant I observed and seized 37 marijuana plants from the patch I had observed from the air. The marijuana patch had been cut from the center of a thick briar patch and the only access to the patch was through a tunnel cut in the briars on the north side of the patch. A well worn path led in a northerly direction from the tunnel in the briars to the southwest corner of the residence at 6030 N.W. Rosewood Drive.

"At the end of the path nearest the house I observed a loosely coiled garden hose. On the north side of the residence I observed two buckets containing 5 marijuana plants.

"It has been my training and experience that the cultivation of marijuana is associated with the following: irrigation equipment, earth-tilling equipment, fertilizer, and records of planting dates & growth of the marijuana. It has also been my training & experience that the harvesting & drying of marijuana is associated with the following: scissors & clippers for

manicuring; flat pans & racks for drying; plastic bags for packaging; and scales for weighing. The described items are, in my experience, generally stored in the residence, buildings, and vehicles on the same property as the marijuana.

"The residence at 6030 NW Rosewood Drive is further described as follows: a wood-frame, single family dwelling, natural wood color located on the south side of the street. See attached Exhibit AA for additional detail.

"During the search of the land it appeared that the residents of 6030 NW Rosewood Drive were not home. The presence of police officers, however, was observed by neighbors. Due to the lateness of the hour & the likelihood that the residents will be warned of police presence, your affiant requests that the Court endorse the warrant for night time service.

"Based on the above information, I pray the Court to issue a warrant to search the described premises for the described evidence."

On the attached map, the officer had sketched the supposed location of defendants' house, the five potted marijuana plants, the hose, the path and the marijuana patch. The map indicated that the patch was located across the border between defendants' and the Starbecks' properties.

The second search warrant was issued, authorizing a search of defendants' home. There, police seized, among other things, marijuana, marijuana seeds, smoking pipes, brass screens, surgical clamps and rolling papers.

Defendants each filed a motion to suppress, a supplemental motion to suppress and a motion to controvert. At the hearing, the evidence established, and the court found that the marijuana patch was located wholly on the Starbecks' property. The trial court found that the inaccurate statements in the affidavits concerning the location of the marijuana patch were not made in good faith, were not intentionally inaccurate and were not simply negligent, because the officers did not know and could not have reasonably known exactly on which property the marijuana was located. After excising the inaccurate information, the trial court found there was probable cause to "seize the marijuana because the affidavit referred to a photograph, there was a definite location." The court found that the seizure of the five potted plants was unlawful. It

concluded, nonetheless, that the evidence of the tunnel point-
ing towards defendants' home, the path leading from the
patch to their home and the coiled garden hose at the end of
the path provided probable cause to search the home. There-
fore, the trial court suppressed only the five potted plants, but
none of the other evidence. Defendants were found guilty after
a trial on stipulated facts. The state does not cross-appeal the
suppression of the five potted plants.

Defendants contend that the search of their land and
their home violated their rights under Article I, section 9, of
the Oregon Constitution[1] and the Fourth Amendment to the
United States Constitution. They argue that the affidavit in
support of the first search warrant contains inaccurate state-
ments and that, when those are excised and the affidavit
reexamined in the light of the controverting statements made
at the hearing, the affidavit does not provide probable cause to
search their land. They offer the same argument against the
affidavit in support of the second warrant and also argue that
the second warrant was based on evidence unlawfully seized
during the first search of their land. Because we hold that
defendants' state constitutional rights were violated, we do
not address the federal question. *State v. Kennedy,* 295 Or 260,
666 P2d 1316 (1983).

■    Before considering the arguments, we must address
the state's contention that defendants lack standing to chal-
lenge the seizure of the 37 marijuana plants, because they were
located on the Starbecks' property. The state has misin-
terpreted defendants' argument. They do not challenge the
seizure of the 37 marijuana plants, but only the evidence
seized from their land and their home. They unquestionably
have a sufficient interest to challenge an alleged violation of
their state constitutional rights. *See State v. Anspach,* 298 Or
375, 692 P2d 602 (1984); *State v. Russo,* 68 Or App 760, 683
P2d 163 (1984).

Turning to the merits, when an affidavit supporting a

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable search, or seizure; and no
warrant shall issue but upon probable cause, supported by oath, or affirmation,
and particularly describing the place to be searched, and the person or thing to be
seized."

search warrant contains inaccuracies, the court must determine whether the inaccuracies require suppression. ORS 133.693(5). In *State v. Diaz,* 29 Or App 523, 525-26, 564 P2d 1066 (1977), we explained:

"* * * If, during the hearing on a motion to suppress evidence obtained by search warrant, the defendant establishes the information presented to the issuing magistrate was not offered in good faith, was not accurate and was not truthful, the court then shall determine if the issuing magistrate could, relying on the accurate parts of the affidavit and disregarding the inaccurate parts, have determined there was probable cause to search. ORS 133.693(5); *State v. McManus,* 267 Or 238, 517 P2d 250 (1973); *State v. Hughes,* 20 Or App 493, 532 P2d 818 (1975). The testimony at the suppression hearing can detract from the affidavit to the extent that it proves inaccuracies, but the testimony cannot add to the affidavit because information known to the affiant or his informers, but not communicated to the issuing magistrate, cannot be the basis for a probable cause determination. *State v. Hughes, supra. See also* ORS 133.545(3). In determining the validity of this warrant we examine the information contained within the affidavit, excising inaccurate information, to determine if there is probable cause to search the residence where defendant was living."

We will first consider the sufficiency of the first affidavit. Defendants contend that its first inaccuracy arises by implication from this statement:

"* * * In addition, on July 21, 1983, I received confidential information regarding the possible location of growing marijuana at several sites near Corvallis.

"In order to corroborate the information, the Department of State Police assigned an aircraft to conduct an aerial surveillance on July 22, 1983, of the various locations at which marijuana was thought to be growing."

Defendants argue that that implies that the informant observed the marijuana patch involved in this case. In fact, the informant had not seen the marijuana patch, but had observed other marijuana growing in the area, and Nelson by chance had observed the marijuana involved in this case while searching for that other marijuana.

The trial court implicitly found that the quoted statement was accurate when it stated at the hearing that all

the statements in the affidavit were correct, except those concerning the exact location of the marijuana. The trial court's oral finding was incorporated by reference in its written order. We are bound by that finding of fact, because there is evidence to support it. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). In any event, the magistrate would not have had to rely upon the erroneous implication asserted by defendants, for the photographs attached to the affidavit and Nelson's observations established the existence of the marijuana.

■■ The next statement challenged by defendants is that concerning the precise location of the marijuana. The marijuana patch was located wholly on the Starbecks' property, approximately 92 feet south of defendants' home and 57 feet south of the southern border of their property. Thus, as the trial court found, the statement that the marijuana was located on the border of the two properties and the circle drawn on the attached map were inaccurate. The trial court found that the inaccurate statements were not intentional and were not negligent, but that they were not made in good faith. Defendants argue that the statements were intentionally false, but the record does not support such a conclusion. The record reveals, and we interpret the trial court as finding, that Nelson merely speculated as to the precise location of the marijuana and overstated the information he had. In such a case, we reexamine the entire affidavit in the light of the controverting statements made at the hearing.[2] *See State v. Harp,* 68 Or App 666, 685 P2d 432, *rev allowed* 298 Or 238 (1984); *State v. Haines,* 62 Or App 163, 659 P2d 972 (1983).

■■ After that reexamination, we hold that the first affidavit does not provide probable cause to search defendants' land. Without the inaccurate statements there remains nothing to tie the marijuana patch to defendants' property. What remains are the photographs, but they do not provide probable cause to search defendants' land, because they do not establish that the marijuana was located there. The photographs alone would not enable the magistrate to issue a

---

[2] We decline defendants' suggestion that we add the correct information that the marijuana was located wholly on the Starbecks' property to the affidavit in determining whether it provides probable cause. As noted in *State v. Harp,* 68 Or App 666, 685 P2d 432, *rev allowed* 298 Or 238 (1984), we may consider only the facts brought to the magistrate's attention in determining the sufficiency of the affidavit.

warrant setting forth with particularity the area to be searched. *See* ORS 133.545(3); *State v. Blackburn/Barber,* 266 Or 28, 34-35, 511 P2d 381 (1973). Thus, the evidence discovered during the search of defendants' land—the garden hose and the well-worn path on defendants' land—must be suppressed. *State v. Laundy,* 103 Or 443, 204 P 958, 206 P 290 (1922).

■ We hold also that the evidence seized under the second warrant must be suppressed. ORS 133.683 provides:

> "If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

The affidavit supporting the second warrant incorporates the first affidavit and relies chiefly on evidence discovered during the execution of the first search warrant on defendants' property. Excising the evidence of the coiled garden hose, the path on defendants' land leading to defendants' home[3] and the potted marijuana plants, disregarding the map improperly showing the marijuana to be partially on defendants' land and having in mind the inaccuracies in the first affidavit, the only evidence suggesting that defendants' home would contain evidence related to the cultivation of the marijuana is the patch itself and the tunnel through the blackberries on the north side of the patch, facing defendants' home. Without the benefit of the unlawfully discovered evidence, the affidavit does not contain the probable cause required under the state constitution to justify a search of defendants' home. *State v. Anspach, supra.* Because the unlawfully discovered evidence

---

[3] We realize that the police, from their lawful vantage point on the Starbecks' property, would have lawfully discovered the portion of the path leading north from the marijuana patch to the border of defendants' property; but the record does not reveal whether the officers would have been able to see that it led to defendants' house. We decline to assume that they could, because the record indicates that the area involved was heavily wooded.

served as the chief basis of the second search warrant, the discovery of the evidence in defendants' home resulted from the previous unlawful search of their property. Thus, under ORS 133.683, the evidence seized from defendants' home must be suppressed.[4]

Reversed and remanded for new trial.

---

[4] Although the state correctly argues that the 37 marijuana plants inevitably would have been seized lawfully by virtue of Mr. Starbeck's permission to search his property, it does not argue, and thus has not established, that the evidence seized from defendants' home inevitably would have been discovered without the unlawful search of their property.